**Jason K. Singleton**, State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski**, State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

Attorneys for Plaintiff, ASIS INTERNET SERVICES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation,<br><br>    Plaintiff,<br>vs.<br><br>IMARKETING CONSULTANTS, INC., dba ULTRA-MX.COM, also dba SPEED NETWORK, also dba SPEED-MX.COM, and DOES ONE through FIFTY, inclusive,<br><br>    Defendants. | Case No.  C-07-5357 CW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>DATE:  under submission<br><br>CTRM: 2, 4TH FLOOR, OAKLAND |

OPPOSITION TO MOTION TO DISMISS            1                        C-07-5357 CW

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................3

    1.   The Court has personal jurisdiction since the emails were sent by Defendant to a Northern California IAP. ..................................................3

    2.   Venue is proper where the Plaintiff sustained harm..................................7

    3.   Defendant has failed to meet its burden to demonstrate that venue should be transferred ..................................................................................7

    4.   A CAN SPAM Act cause of action is not necessarily a pleading of fraud and therefore does not require a pleading sufficient under *FRCP* Rule 9(b). If Plaintiff's Complaint is found to require such a pleading then Plaintiff has pled the facts with sufficiency to meet the requirements of Rule 9(b)....9

    5.   Plaintiff has stated a claim for which relief can be granted ....................12

    6.   Plaintiff's Complaint is not futile and the Court should allow Plaintiff to amend if necessary......................................................................................15

**CONCLUSION** ..............................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Aitken v. Communications Workers of America*, 496 F.Supp.2d 653 at 659 (E.D. Va., 2007) .................................................................................................................................5
*Anderson v. Thompson*, 634 F.Supp. 1201 at 1204 (D.Mont., 1986) .....................................8
*Asis Internet Services v. Optin Global, Inc.*, Not Reported in F.Supp.2d, 2006 WL 1820902 at 3 (N.D.Cal., 2006) ........................................................................................10, 11
*Calder v. Jones*, 465 U.S. 783, 789 (1984) .........................................................................5, 6
*Commodity Futures Trading Commission v. Savage*, 611 F.2d 270 (9th Cir., 1979) ...........8
*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ......................................................................13
*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) .............8
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 at 1051–1052 (9th Cir., 2003) .......15
*Gordon v. Impulse Marketing Group, Inc.*, 375 F.Supp.2d 1040 (E.D.Wash. 2005) ...........10
*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984) ............4
*Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773 at 779-780 (S.D. Miss., 2001) ............6
*Lung v. Yachts Intern., Ltd.*, 980 F.Supp. 1362 at 1370 (D.Hawai'i, 1997) ..........................8
*Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir., 1990) ................3, 5, 6
*Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308 at 311 (C.D.Cal., 1994) ......................13
*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 at 214 (9th Cir., 1988) ....................................15
*Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) .....................................................10
*Myers v. Bennett Law Offices*, 238 F.3d 1068 at 1072 (9th Cir., 2001) ............................6, 7
*Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 at 954 (9th Cir., 1968) .........................8
*Swierkiewicz v. Sorema N. A.* 534 US 506, 513 (2002) .......................................................11
*United States v. National City Lines*, 334 U.S. 573, 583 (1948) ..........................................8
*Usher v. City of Los Angeles*, 828 F.2d 556 at 561 (9th Cir. 1987) ....................................12
*Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 at 611-620 (E.D. Va., 2002) ....6
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 - 1104 (9th Cir. 2003) .....................10

**STATUTES**

**15** *USC* **7702(17)** ...................................................................................................................14
**15** *USC* **7704** .................................................................................................................3, 13
**15** *USC* **7704(a)** .........................................................................................................1, 15
**15** *USC* **7704(a)(1)** ............................................................................................... passim
**15** *USC* **7704(a)(1)(A)** ...............................................................................................14
**15** *USC* **7704(a)(1), (2), (3), (4), and (5)** ...................................................................13
**15** *USC* **7704(a)(2)** ....................................................................................................13
**15** *USC* **7704(a)(2)–(5)** .............................................................................................14
**15** *USC* **7704(a)(4)** ....................................................................................................14
**15** *USC* **7704(a)(6)** ....................................................................................................15
**15** *USC* **7704(b)(1)** ............................................................................................12, 14
**15** *USC* **7704(b)(2)** ............................................................................................12, 14
**15** *USC* **7706(g)(1)** ..............................................................................................7, 13
**15** *USC* **7706(g)(3)(A)(i) and (ii)** ............................................................................14
**28** *USC* **1391(b)** ......................................................................................................1, 7
**28** *USC* **1404(a)** ......................................................................................................7, 8
*California Code of Civil Procedure* §410.10 .......................................................................3
*CAN SPAM Act* ......................................................................................................... passim

**RULES**

***FRCP* Rule 12(b)(6)**..................................................................................................15
***FRCP* Rule 9(b)** ........................................................................................i, 9, 10, 11

**CONSTITUTIONAL PROVISIONS**

***U.S. Constitution* Amendment 5**................................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff, ASIS Internet Services (hereafter "**ASIS**"), responds to Defendant, IMARKETING CONSULTANTS, INC. (hereafter "**IMARKETING**") Motion to Dismiss and opposes the Motion.

### I. INTRODUCTION

Defendant argues the Court does not have personal jurisdiction over Defendant because Plaintiff cannot identify the sender of the emails from the information provided in the headers of the emails. Defendant ignores the fact that the postal opt-out address in the email body is the corporate address of Defendant **IMARKETING**, and identifies **IMARKETING** as the sender. This along with the fact that the emails were sent from a computer that Imarketing has been identified as a customer for, clearly indicates that **IMARKETING** sent the emails.

Therefore, based on current case law and the fact that the emails were sent to an email service in Northern California, establishes specific personal jurisdiction of the Northern District Court. In addition, Defendant includes in its papers an argument that Plaintiff has not pled in its complaint with sufficient particularity as required by *FRCP* Rule 9(b). By submitting this argument to the court, Defendant has submitted to the court's jurisdiction to resolve the issue and has therefore waived its argument regarding lack of personal jurisdiction. Finally, Defendant argues that it did not send emails to Northern California and then argues that the emails are not violations of the *CAN SPAM Act*, because of the efforts undertaken by **IMARKETING** to prevent SPAM. Defendant can't have it both ways.

Defendant argues that if the court finds that it has personal jurisdiction then venue is not proper. Defendant misinterprets the language of 28 *USC* 1391(b) and current case law. Defendant relies on the language of 15 *USC* 7704(a) that states that the violation occurs when the emails are transmitted to determine that venue would be proper where the emails were transmitted, not where they were received. However, since the harm caused by the emails occurred when they were received in Northern California, a substantial part of the events giving rise to the claim occurred in Northern California and therefore Northern California is the proper venue. The fact that the emails were sent to unassigned accounts does not eliminate the harm done to **ASIS** as an Internet Access Provider (hereafter "IAP"). **ASIS** was still

1   required to use its email service to process the emails, its spam filtering service to filter the
2   emails, its network connections to receive the emails, and its agent's efforts in investigating the
3   emails.  Just as important most of the evidence in this case is resident in the Northern District
4   of California.

5   Defendant requests that the court transfer venue to the South Florida Federal District.
6   Defendant provides no overwhelming basis for prejudice against itself that justifies a change of
7   venue.  The Court should deny this request.

8   Defendant claims that Plaintiff has not pled its complaint with the requisite particularity.
9   Defendant's argument is meritless and refers to causes of action not contained in the
10  complaint.  Plaintiff's complaint does not allege false subject lines.  In fact, Plaintiff's complaint
11  does not even mention the subject lines of the emails.  As to whether the email headers
12  contain false and misleading information, Plaintiff discusses in excruciating detail why the
13  headers are false.  The headers contain sending email accounts that include a domain name
14  that was registered using a privacy service.  Thus hiding the identity of the sender from the
15  receiving IAP and investigators.

16  Defendant argues that Plaintiff is precluded from its claim because the evidence
17  provided in the complaint somehow indicates Plaintiff has not stated a proper claim.
18  Defendant has failed to read the **CAN SPAM Act** in its entirety.  The **CAN SPAM Act** clearly
19  makes it illegal to send any email, not just a commercial email, which contains materially false
20  header information.  The **CAN SPAM Act** defines false header information as an email that
21  contains an email account, domain name, or IP address that was obtained under false
22  representations.  When registering a domain name with a privacy service the registrant is
23  required to represent that they will not use the domain to send unsolicited bulk email.  By using
24  the domain to send bulk email the sender has violated the registration agreement of the
25  service. The sender has therefore obtained the domain with a false representation.

26  In addition, the **CAN SPAM Act** defines the term "materially" as any concealment of the
27  header information that would prevent the IAP or an investigator from determining the identity
28  of the sender.  Clearly, use of a proxy service to register a domain name conceals the identity

1  of the sender from the IAP and investigators.

2  The fact that information identifying the sender is contained in the body of the email is
3  not relevant to whether the email headers are materially false or misleading.  Opening emails
4  from unknown parties is dangerous, they may contain viruses, trojans, etc.  One of the primary
5  reason for making the header information the subject of the act is so that recipients and IAPs
6  do not have to open the emails to identify who they are from.

7  The causes of action allowed in 15 *USC* 7704 are not interdependent.  A false header
8  violation hiding the identity of the sender cannot be overcome by providing a valid physical
9  address in the body of the email.  Not identifying the email as a commercial advertisement; not
10 including a valid postal address; not including an opt-out mechanism; and not including a
11 working return address are completely separate violations.  Nor does proof of solicitation
12 overcome a violation of 15 *USC* 7704(a)(1) false header information as the violation includes
13 both commercial electronic mail messages and transactional emails (i.e. that is emails that
14 have been solicited).

15 If the Court finds that Plaintiff's Complaint is deficient in some fashion then, without a
16 clear showing of prejudice to Defendant or some other factor, the Court should allow Plaintiff to
17 amend its Complaint.

## II.  ARGUMENT

**1.   The Court has personal jurisdiction since the emails were sent by Defendant to a Northern California IAP.**

21 Personal jurisdiction is established by sending emails to a resident in the forum and
22 using servers in the state.

23 Determining whether jurisdiction exists over an out-of-state defendant involves two
24 inquiries: (1) whether the forum state has an applicable long-arm statute, and (2) whether the
25 assertion of jurisdiction comports with the constitutional requirements of due process.  ***U.S.***
26 ***Constitution*** Amendment 5.  California's long arm statute provides for jurisdiction not
27 inconsistent with the Constitution of the United States.  ***California Code of Civil Procedure***
28 §410.10  ***Metropolitan Life Ins. Co. v. Neaves***, 912 F.2d 1062, 1065 (9th Cir., 1990).  The

court uses a three part test to determine specific personal jurisdiction.

    1.    The non-resident must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

    2.    The claim must be one which arises out of or results from the defendant's forum-related activities.

    3.    Exercise of jurisdiction must be reasonable.

*Ibid.*

A forum can invoke specific personal jurisdiction when the subject matter of the litigation is also the basis for personal jurisdiction. **Helicopteros Nacionales de Colombia, S.A. v. Hall**, 466 U.S. 408, 414 n. 8 (1984). Since the emails that are complained of in the suit are the subject matter of the suit and are the contact with the California Forum, specific jurisdiction is proper.

Defendant states that it is not "sending emails to anyone in California." Robert Clouse Affidavit, Docket 4-2, Pg. 2, L. 8–9. However, Defendant did not state that it did not send the subject emails in this case. The facts contained in the emails further contradict Mr. Clouse's statement. Although the header information is hidden behind a privacy service (See Complaint, Exhibit A for examples of the emails and Exhibit C for the WHOIS information on domain name "ultra-mx.com"), the body of the emails contain the address for the corporate headquarters of Imarketing, Inc. of "1300 NW 17th Avenue Ste 218 Delray Beach FL 33445". See Complaint, Exhibit A for examples of the emails and Exhibit E for the corporate address of Imarketing, Inc.

In addition, SPAM filtering software detects and saves the IP address for the sending mail server. See Complaint, Exhibit A for examples of the emails and Exhibit F for IP information for "65.240.228.65." The IP information for server "65.240.228.65" shows that Imarketing, Inc. is a customer that uses that server. While the IP information is not definitive that **IMARKETING** sent the emails, it is incredibly coincidental that Defendant is a customer on the server that was detected as sending the emails. Note that IP address "65.240.228.65" is not the IP address appearing in the header, it is the IP address detected by the Postini SPAM filtering software as the source of the email. The IP addresses in the raw header information

1  are obviously forged, as some of the emails contain received from IP addresses from restricted
2  blocks such as 1.X.X.X.  Since this IP range is reserved to the Internet Assigned Numbers
3  Authority (IANA), the IP addresses cannot possibly be the correct sending address.  Other IP
4  addresses appear to be coming from China or Russia, even though Postini detected the same
5  IP address of "65.240.228.65" as the sending IP for all of the emails.
6      Also, Plaintiff attorney's other clients have received similar emails in Northern California,
7  containing the same postal opt out information.  See Declaration of Joel Householter and
8  attached emails sent to customers of IAP Foggy.net.  These emails using different SPAM
9  filtering software show the sending IP address was "65.240.228.65," the same sending IP as
10 detected by Plaintiff's filtering software.
11     The fact that the emails were sent from a computer that **IMARKETING** has been
12 identified as a customer for and the presence of the Imarketing corporate address in the email,
13 clearly indicates that **IMARKETING** sent the emails.
14     The Defendant also states that it is not doing business in California and has no physical
15 presence in California.  However, it does not matter if a defendant does not have a physical
16 presence in the forum if their foreign action has an effect in the forum state.  ***Metropolitan Life***
17 ***Ins. Co. v. Neaves***, 912 F.2d 1062, 1065 (9th Cir., 1990); citing ***Calder v. Jones***, 465 U.S.
18 783, 789 (1984).
19     Clearly sending emails into a forum has an affect on the forum.  The IAP receiving the
20 emails must process them in its server, run them through their filtering server, decide whether
21 or not to present them to the intended recipient, or dispose of them and risk offending the
22 consumer.  The emails had to be routed through telecommunication servers in the forum state
23 as well as other states to get to Plaintiff's server in Northern California.  If they are presented to
24 a potential recipient then the consumer must process them.   All of these actions incur the time
25 and expense of the IAP and potentially the consumer.  Other forums have held that sending
26 emails into a forum constitute the minimal contacts required for specific personal jurisdiction.
27 ***Aitken v. Communications Workers of America***, 496 F.Supp.2d 653 at 659 (E.D. Va.,
28 2007); ***Verizon Online Services, Inc. v. Ralsky***, 203 F.Supp.2d 601 at 611-620 (E.D. Va.,

1  2002); and ***Internet Doorway, Inc. v. Parks***, 138 F.Supp.2d 773 at 779-780 (S.D. Miss.,
2  2001).

3        The 9th Circuit has decided that to establish specific personal jurisdiction the defendant
4  must have known that they were performing an act that would affect a resident of the forum
5  state.  ***Myers v. Bennett Law Offices***, 238 F.3d 1068 at 1072 (9th Cir., 2001).  In this case
6  the emails were sent to email addresses of the form xxxx@asis.com, where "xxxx" is the
7  intended recipient's name.  It is a simple matter to check a domain to know where that domain
8  is physically located.   The domain name "asis.com" is located in northern California and this
9  fact is available to anyone performing a WHOIS domain name lookup.  It is inconceivable that
10 a marketing company sending email advertisements over the internet would not know where
11 the emails were being sent, given the ease of discovery and the nature of the
12 marketing/advertising business.

13       Therefore, Defendant has purposely availed itself of the benefits of the forum by
14 sending the emails and the emails are the subject matter of the litigation.

15       Is it reasonable to subject Defendant to the process of defending itself in the foreign
16 forum of Northern California?   "An individual injured in California need not go to Florida to
17 seek redress from persons who, though remaining in Florida, knowingly cause the injury in
18 California."  ***Calder v. Jones***, 465 U.S. 783, 790 (1984).  Plaintiff was harmed in California by
19 receipt of the emails in violation of the ***CAN SPAM Act***.  Defendant obviously had to know to
20 whom they were sending emails, since it is impossible to send an email without inputting the
21 intended recipients email address.  Therefore, it is fair to cause Defendant to defend itself in
22 California, and it is unfair to force Plaintiff to incur the costs to pursue redress in Florida.

23       If the Court decides the issue of personal jurisdiction, without an evidentiary hearing,
24 then the Court must review the pleadings and affidavit in the light most favorable to the
25 plaintiff, and plaintiff need only make a prima facie showing to defeat defendant's Rule 12(b)(2)
26 motion.  ***Metropolitan Life Ins. Co. v. Neaves***, 912 F.2d 1062, 1064 and FN1 (9th Cir., 1990);
27 also see ***Myers v. Bennett Law Offices***, 238 F.3d 1068 at 1071 (9th Cir., 2001).  The court
28 may then decide to hold an evidentiary hearing or reserve final judgment until trial.  ***Ibid.***  In

this case the ownership of domains "ultra-mx.com" and or "speed-mx.com" (the opt-out domain site listed in the emails) may resolve the issue of who sent the emails. Since this information can only be determined by allowing Plaintiff to issue subpoenas, it would seem practical to find personal jurisdiction and allow discovery of the needed information, reserving final judgment.

**2.     Venue is proper where the Plaintiff sustained harm.**

Where jurisdiction can be established venue is proper where a substantial part of the events or omissions giving rise to the claim occurred. Plaintiff suffered adverse affects and injury in Northern California, therefore a substantial part of the events occurred in Northern California and venue is proper there.

28 **USC** 1391(b) states that in a civil action where jurisdiction is not founded solely on diversity, the action can be brought in: "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…"

Plaintiff has not claimed diversity of citizenship as the basis of jurisdiction in this case. Rather Plaintiff has claimed that subject matter jurisdiction is based on a violation of Federal statute 15 **USC** 7704(a)(1). The **CAN SPAM Act** allows an IAP to bring a civil action: "in any district court of the United States with jurisdiction over the defendant." 15 **USC** 7706(g)(1).

The 9th Circuit has held that the locus of an injury in a tort claim is a substantial factor in determination of venue. **Myers v. Bennett Law Offices**, 238 F.3d 1068 at 1072 (9th Cir., 2001). The emails harmed Plaintiff at its server in Northern California, where the emails were received.

Therefore venue is proper in Northern California.

**3.     Defendant has failed to meet its burden to demonstrate that venue should be transferred.**

Defendant has also asked that the court consider a discretionary transfer of venue to the South Florida District. "For the convenience of parties and witnesses, in the interest of justice," the court may transfer venue, at its discretion, to any district where the action could have been brought. 28 **USC** 1404(a). Defendant has failed to meet its burden in requesting a change of venue.

Defendant argues that it is inconvenient for it to litigate the case in California. Defendant argues that all of its witnesses are in South Florida.

The moving party bears the burden of showing why the forum should be changed. ***Commodity Futures Trading Commission v. Savage***, 611 F.2d 270 (9th Cir., 1979).

> "When a discretionary venue transfer would only shift the inconvenience from defendant to plaintiff, the motion to transfer should be denied. Ammon v. Kaplow, 468 F.Supp. 1304 (D.Kan., 1979). Consequently, a transfer is not available to a forum which is equally convenient or inconvenient to the original forum. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). "

***Anderson v. Thompson***, 634 F.Supp. 1201 at 1204 (D.Mont., 1986).

The Plaintiff's choice of venue should rarely be disturbed. The plaintiff should not be forced to follow the defendant into defendant's home district. The purpose is to allow the plaintiff to pursue redress where the violation occurred and the injuries were inflicted. ***Pacific Car & Foundry Co. v. Pence***, 403 F.2d 949 at 954 (9th Cir., 1968) citing ***United States v. National City Lines***, 334 U.S. 573, 583 (1948).

In considering a transfer of venue under 28 *USC* 1404(a) the court should consider: "(1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice." ***Lung v. Yachts Intern., Ltd.***, 980 F.Supp. 1362 at 1370 (D.Hawai'i, 1997); citing ***Decker Coal Co. v. Commonwealth Edison Co.***, 805 F.2d 834, 843 (9th Cir.1986); 28 *USC* 1404(a).

Defendant argues that its principal place of business is in South Florida. Defendant argues that its evidence and witnesses are in South Florida. However, Defendant ignores that Plaintiff's place of business is in Northern California. Plaintiff's evidence and witnesses are also in Northern California. The harm done to Plaintiff occurred in Northern California. Plaintiff brought the action in the Northern California Federal District.

While litigating the case in California may be costly for the Defendant, it would be just as costly for Plaintiff to litigate the case in Southern Florida. Therefore, Defendant has made no showing that a transfer of venue would be less burdensome for the parties. At the very least the increased burden to Plaintiff is exactly the same as the decrease in burden to Defendant if venue is transferred.

The same can be said of witnesses and evidence.  The initial evidence by Plaintiff must prove that the emails were received and that they violate the **CAN SPAM Act.**  This evidence and witnesses are in Northern California at Plaintiff's offices.  The evidence is not in Southern Florida.  The witnesses and evidence in Southern Florida are primarily evidence that Defendant mitigated its damages by establishing anti-spamming procedures.  This evidence will not even come into play until Plaintiff has made its case that the emails are SPAM sent by Defendant.  Therefore, Defendant has failed to show that the burden for witnesses and evidence is lessened by changing venue to Southern Florida.  In all likelihood the burden is greater for Plaintiff to prosecute in Southern Florida then for Defendant to defend in Northern California.

Finally the court must consider the interests of justice, including its own interests in transferring the case.  The Northern District court has seen a variety of **CAN SPAM Act** cases, and is therefore as competent or more competent to hear SPAM cases then the Southern District of Florida.  The Court has already processed Plaintiff's Complaint, and is by this motion becoming very familiar with the facts of the case.  The Court must take into consideration its own schedule and propensity to handle SPAM cases, but only the Court can deal with this problem.  Plaintiff does not know and Defendant has provided no insight into whether the Southern District Federal Court is more competent in SPAM cases or has a laxer schedule.

Therefore, since Defendant has failed to meet its burden of showing that the case should be transferred, the Court should deny Defendant's motion to transfer venue.

**4.    A CAN SPAM Act cause of action is not necessarily a pleading of fraud and therefore does not require a pleading sufficient under *FRCP* Rule 9(b).  If Plaintiff's Complaint is found to require such a pleading then Plaintiff has pled the facts with sufficiency to meet the requirements of Rule 9(b).**

A complaint of a violation of the **CAN SPAM Act** does not necessarily meet the requirements of **FRCP** Rule 9(b), requiring a heightened level of pleading.  If Plaintiff's complaint is alleged in such a manner to require the higher level of pleading then Plaintiff has provided facts and allegations sufficient to meet the heightened level required.

**FRCP** Rule 9(b) applies where a plaintiff alleges a "unified course of fraudulent conduct

1  and relies entirely on that course of conduct as the basis of a claim. If the plaintiff instead
2  alleges some fraudulent and some non-fraudulent conduct, then the heightened pleading
3  requirements apply only to 'averments' of fraud supporting a claim rather than to the claim as a
4  whole." (citations omitted)  **Asis Internet Services v. Optin Global, Inc.**, Not Reported in
5  F.Supp.2d, 2006 WL 1820902 at 3 (N.D.Cal., 2006); citing **Vess v. Ciba-Geigy Corp. USA**,
6  317 F.3d 1097, 1103 - 1104 (9th Cir. 2003).

7  The Court in **ASIS v. Optin Global** found that **FRCP** Rule 9(b) does not necessarily
8  apply to causes of action brought under the **CAN SPAM Act**. **Asis Internet Services v. Optin**
9  **Global, Inc.**, Not Reported in F.Supp.2d, 2006 WL 1820902 at 3 (N.D.Cal., 2006) citing
10  **Gordon v. Impulse Marketing Group, Inc.**, 375 F.Supp.2d 1040 (E.D.Wash. 2005). The
11  Court instead looked to the definition of fraud in California to determine if certain averments
12  within plaintiff's pleading alleged some fraudulent conduct or a unified course of fraudulent
13  conduct. **Asis Internet Services v. Optin Global, Inc.**, Not Reported in F.Supp.2d, 2006 WL
14  1820902 at 4 (N.D.Cal., 2006).

15  The indispensable elements for fraud under California law include: "a false
16  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."
17  **Vess v. Ciba-Geigy Corp. USA**, 317 F.3d 1097, 1105 (9th Cir. 2003). (quoting **Moore v.**
18  **Brewster**, 96 F.3d 1240, 1245 (9th Cir. 1996).

19  The Court in **ASIS v. Optin Global** found that an allegation of "falsified,
20  misrepresented, or forged header information" <u>did not represent an averment of fraud</u> because
21  the claim does not contain the requisite element of intent or scienter. **Asis Internet Services**
22  **v. Optin Global, Inc.**, Not Reported in F.Supp.2d, 2006 WL 1820902 at 4 (N.D.Cal., 2006).

23  Defendant refers to false subject lines as representing an averment of fraud.
24  Defendant's Motion to Dismiss, Pg. 6, L. 22. Plaintiff <u>did not allege false subject lines</u> in the
25  Complaint against Defendant **IMARKETING**. In fact, the subject lines of the emails are not
26  mentioned anywhere in Plaintiff's Complaint. See Complaint.

27  Defendant admits that Plaintiff does not allege the body of the emails as fraudulent.
28  Defendant's Motion to Dismiss, Pg. 6, L. 26–28. Defendant merely relies on the allegation that

1  "Plaintiff collectively charges Defendant with the responsibility of sending these allegedly false
2  emails…"  Defendant's Motion to Dismiss, Pg. 7, L. 1–2.  According to the decision in ***Asis***
3  ***Internet Services v. Optin Global, Inc.***, Not Reported in F.Supp.2d, 2006 WL 1820902 at 4
4  (N.D.Cal., 2006) this does not represent an averment of fraud requiring the heightened level of
5  pleading of ***FRCP*** Rule 9(b).
6       If the heightened pleading standard is required, then Plaintiff has already met that
7  standard.  The Complaint contains statements of fact, evidence and allegations that clearly
8  explain the details of why the email headers are false and misleading.  The Complaint
9  demonstrates in detail that the headers contain a sending domain name that was registered
10 using a privacy service, thus hiding the true identity of the sender from the receiving IAP and
11 it's agent investigators.  The Complaint also provides examples of the emails and supporting
12 evidence of how and why the headers are in violation of 15 ***USC*** 7704(a)(1).  Complaint, Para.
13 3 and 4, Exhibits A–F.  Therefore, Plaintiff has provided sufficient details to meet the
14 heightened pleading standard on ***FRCP*** Rule 9(b).
15      Defendant also complains that Plaintiff has redacted the actual email addresses that the
16 emails were sent to, and this deprives Defendant of proper notice of the violation.  Plaintiff has
17 provided Defendant with proper notice of Plaintiff's cause of action.
18      Plaintiff's complaint is short and plain and meets the federal notice pleading standard.
19 ***FRCP*** Rule 8(a) requires:
20      "A pleading which sets forth a claim for relief … shall contain (1) a short
     and plain statement of the grounds upon which the court's jurisdiction
21      depends … (2) a short and plain statement of the claim showing that the
     pleader is entitled to relief, and (3) a demand for judgment for the relief the
22      pleader seeks…"
23      The federal regulations require that a complaint be "short and plain."  Further the federal
24 regulations require that the plaintiff simply "give the defendant fair notice of what the plaintiff's
25 claim is and the grounds upon which it rests."  ***Swierkiewicz v. Sorema N. A.*** 534 US 506,
26 513 (2002).  Plaintiff has stated the cause of action as a violation of 15 ***USC*** 7704(a)(1) by
27 Defendant.  Plaintiff has provided samples of the emails and evidence of false headers as
28 grounds for the complaint.  Therefore, Plaintiff has provided a short and plain statement that

1 gives Defendant fair notice.

2 As to the email recipient addresses, Plaintiff provided redacted copies of the emails, 3 with the recipient domain name of the email showing.  See Complaint, Exhibit A.  The recipient 4 domain indicates that the emails were sent to "asis.com" email accounts.  Plaintiff has not 5 provided the rest of the email account information because it is the protected corporate 6 information of Plaintiff ASIS, and would expose ASIS to potential attacks by unscrupulous 7 persons.  The federal notice pleading standard does not require that Plaintiff provide this type 8 of very detailed information in its complaint.   Plaintiff will provide the entire set of emails 9 without redaction when a protective order is in place restricting Plaintiff's Corporate information 10 to attorney's eyes only.

11 Plaintiff is not required to provide further detail since it has provided Defendant with fair 12 notice of Plaintiff's claims.  In the alternative, if the Court finds that a more detailed allegation is 13 required then Plaintiff requests the Court's permission to amend its Complaint, with the Court's 14 instruction.

15 **5.     Plaintiff has stated a claim for which relief can be granted.**

16 Defendant claims that Plaintiff has not stated a claim for which relief can be granted. 17 Defendant further claims that the information provided in Plaintiff's Complaint provides proof 18 that no violation of the *CAN SPAM Act* occurred.  A claim for statutory penalties by an IAP for 19 violation of 15 *USC* 7704(a)(1) and (b)(1) and (2) is a claim for which relief can be granted by 20 the Court.   Defendant has misread the *CAN SPAM Act* and their interpretation of what 21 constitutes a violation is incorrect.

22 Defendant correctly states that it is a violation of 15 *USC* 7704(a)(1) for anyone to send 23 any email with false or misleading header information.  Plaintiff alleged that Defendant sent or 24 caused emails to be sent to "asis.com" email addresses with false and misleading header 25 information.

26 "On a motion to dismiss for failure to state a claim, the court must presume all factual 27 allegations of the complaint to be true and draw all reasonable inferences in favor of the 28 nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556 at 561 (9th Cir. 1987).  "A

1 complaint should not be dismissed for failure to state a claim unless it appears beyond doubt
2 that the plaintiff can prove no set of facts in support of his claim which would entitle him to
3 relief." *Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308 at 311 (C.D.Cal., 1994) citing
4 *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

5   Defendant's only argument appears to be that Plaintiff has not alleged "how the headers
6 are materially false or misleading in the Complaint." Defendant's Motion, Pg. 8, L. 1–2.
7 Defendant's other argument concerning 15 *USC* 7704(a)(2) is not relevant since Plaintiff did
8 not allege a violation of that section. See Complaint. As discussed above, Plaintiff is not
9 required under the federal notice standard to allege all of the details of its cause of action, only
10 enough allegations to give Defendant notice of the claim. Plaintiff has clearly put Defendant on
11 notice of its claim, that is, the emails were sent by Defendant and contained false header
12 information. Plaintiff asked the Court for relief in the prayer. Complaint, Para. 13 and Prayer.

13   In addition, Plaintiff explains in its Complaint why and how the email headers are false
14 and misleading. See Complaint, Para. 3 and 4 and Exhibits A–F.

15   Without some further proof by Defendant, their argument has no merit and Plaintiff has
16 clearly stated a claim under 15 *USC* 7704(a)(1) for which the court can and should grant relief.

17   Next Defendant argues that because the emails contain some elements that are not in
18 violation that Plaintiff cannot sustain its cause of action. Defendant has incorrectly read 15
19 *USC* 7704. The statute makes no reference to interdependent violations, rather it sets out five
20 completely separate areas of violation, of which any one is actionable. 15 *USC* 7704(a)(1),
21 (2), (3), (4), and (5). There is no indication in the language of the statute that the different
22 areas of violations must all occur to allow a cause of action under any one paragraph.
23 Moreover, the enabling statute for IAP's, 15 *USC* 7706(g)(1), states:

> A provider of Internet access service adversely affected by a violation of
> section 7704(a)(1) of this title, 7704(b) of this title, or 7704(d) of this title,
> or a pattern or practice that violates paragraph (2), (3), (4), or (5) of
> section 7704(a) of this title, may bring a civil action…

27 The legislature has clearly used the language connector "or" to allow for prosecution
28 under any of the referenced paragraphs of section 7704. In addition, the legislature set

different penalties for the various forms of violations.  See Statutory Damages in 15 **USC** 7706(g)(3)(A)(i) and (ii).  Clearly indicating that these represent separate and independent violations.

Evidence contained in the Complaint of how Defendant did not violate 15 **USC** 7704(a)(2)–(5), does not relieve Defendant of liability for violating 15 **USC** 7704(a)(1) and (b)(1) and (2).

Even if Defendant could prove that the emails were solicited that evidence does not represent a defense to a violation of 7704(a)(1).  Primarily because if the email header information is false it does not identify the party to whom the affirmative consent was granted.  In addition, 15 **USC** 7704(a)(1) allows for a violation for sending commercial, transactional or relationship emails.  A transactional email is defined as a relationship where the party has requested email or established a business relationship.  15 **USC** 7702(17).   15 **USC** 7704(a) does not even mention affirmative consent as a defense, except when subsequently provided after a violation of 15 **USC** 7704(a)(4).  It is therefore very likely that the legislature did not mean affirmative consent as a defense to 15 **USC** 7704(a)(1).

Therefore solicitation does not relieve a defendant for a violation under 7704(a)(1).

Further, affirmative consent or solicitation is a partial defense to violations of parts of the **CAN SPAM Act**.  Therefore, the burden is on Defendant to provide evidence of solicitation.  Defendant has provided no such evidence.

Defendant also ignores the plain language of 15 **USC** 7704(a)(1)(A) that states:

> (A) header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading

Plaintiff has demonstrated that acquiring a domain name from a privacy service requires a representation that the domain name will not be used to send SPAM.  See Complaint, Exhibit C.  Since using the domain name to send SPAM violates the registration agreement, the domain name was acquired by a false representation.  This is alleged in detail in the Complaint.

Additionally the domain name does not match the IP address included in the header. As stated above, the IP address for "ultra-mx.com" is "65.240.228.65." See Complaint, Exhibit F. This IP address was not included in the emails received by Plaintiff. The statement "Received: from source ([65.240.228.65]) by exprod5mx230.postini.com ([64.18.4.11]) with SMTP;" appearing in the emails was placed there by the Postini SPAM filtering software, when the email was received. The prior line in the email states the "Received: from" IP address that was contained in the header prior to receipt by the SPAM software. None of those IP addresses match to the sending domain name of "ultra-mx.com." No other received from IP addresses are contained in the emails. This means that either the sending domain name was forged or the sending IP address was forged. In either case this meets the definition of a materially false header as defined in 15 **USC** 7704(a)(6), the definition of materiality as regards false headers in section 7704(a)(1).

Therefore, Defendant has failed to meet their burden, in filing a **FRCP** Rule 12(b)(6) motion, that Plaintiff's Complaint fails to show a claim that would entitle Plaintiff to relief.

### 6. Plaintiff's Complaint is not futile and the Court should allow Plaintiff to amend if necessary.

Defendant argues that Plaintiff should not be allowed to amend its Complaint because it would be futile. Defendant is incorrect.

The federal policy to allow amendment of a pleading is to be applied liberally. In the absence of any stated reason such as futility, leave should be granted liberally. Absent prejudice or a strong showing of other factors there is a presumption in favor of granting leave to amend. **Eminence Capital, LLC v. Aspeon, Inc.,** 316 F.3d 1048 at 1051–1052 (9th Cir., 2003). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." **Miller v. Rykoff-Sexton, Inc.**, 845 F.2d 209 at 214 (9th Cir., 1988).

Defendant has failed to demonstrate how Plaintiff cannot recover from its cause of action under 15 **USC** 7704(a)(1). Plaintiff has demonstrated that the headers are false and misleading within the meaning of the statute. Plaintiff has demonstrated that Defendant is the

1  likely sender of the emails as alleged in the Complaint.

2  The court should deny Defendant's motion or in the alternative allow Plaintiff to amend
3  it's Complaint.

### III.  CONCLUSION

Plaintiff has demonstrated that Defendant is the likely sender of the emails and therefore the Court has specific personal jurisdiction over Defendant.  Plaintiff has demonstrated that venue is proper in the Northern District of California and Defendant has failed to meet its burden to show why venue should be transferred to the Southern Florida District.  Defendant has failed to show why the heightened pleading requirement for fraud should apply.  Plaintiff has demonstrated that it's complaint states a claim for relief that the court can grant.  Defendant has failed to show that, if necessary, amendment of Plaintiff's Complaint is futile.

The Court should deny Defendant's Motion and if necessary allow Plaintiff to amend it's Complaint.

**SINGLETON LAW GROUP**

Dated:        January 23, 2008          /s/ Jason K. Singleton
                                        Jason K. Singleton
                                        Richard E. Grabowski
                                        Attorneys for Plaintiff, **ASIS INTERNET SERVICES**