Arthur W. Fleishman, CA Bar No. 222886
awf@mdd-law.com
McClosky, D'Anna & Dieterle, LLP
2300 Glades Road
Suite 400, East Tower
Boca Raton, FL 33431
Telephone: (561) 368 – 9200
Facsimile:   (561) 395 - 7050

Attorneys for Defendants,
IMARKETING CONSULTANTS, INC., *et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>IMARKETING CONSULTANTS, INC., dba ULTRA-MX.COM, also dba SPEED NETWORK, also dba SPEED-MX.COM, and DOES ONE through FIFTY, inclusive,<br><br>　　　　　Defendants. | Case No.: C 07-05357 CW<br><br>**DEFENDANT IMARKETING CONSULTANTS, INC.'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA**<br><br>Date: under submission on papers |

　　　　Defendant Imarketing Consultants, Inc. ("Imarketing"), by and through its undersigned counsel, hereby replies to Plaintiff ASIS Internet Services' response in opposition ("Opposition Response") to Imarketing's motion to dismiss Plaintiff's Complaint for Damages and Injunctive Relief or, in the alternative, to transfer the action to the Southern District of Florida ("Motion"), and states:

**I.　　INTRODUCTION**

　　　　Plaintiff filed its Complaint against Imarketing, as well as purported aliases and unknown individuals, alleging violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. § 7701 et seq., seeking

injunctive relief, statutory damages, aggravated damages, and attorney's fees.[1] As argued in Imarketing's Motion, Plaintiff's Complaint must be dismissed as to Imarketing based on the following: (a) lack of jurisdiction over Imarketing; (b) improper venue; (c) failure to plead with the requisite particularity; and (d) failure to state a claim upon which relief may be granted. On January 24, 2008, Plaintiff filed its Opposition Response to Imarketing's Motion. Therein, Plaintiff mischaracterizes Imarketing's statements and arguments. More importantly, a majority of Plaintiff's arguments are an incorrect as a matter of law. Based on the foregoing, Imarketing respectfully requests that this Court dismiss the Complaint or, in the alternative, transfer the case to the Southern District of Florida.

## II.   POINTS AND AUTHORITY IN REPLY TO PLAINTIFF'S RESPONSE

### A.   This Court Lacks Personal Jurisdiction Over Imarketing.

Plaintiff is a California corporation that provides internet services. Imarketing is a Florida corporation. Plaintiff alleges that this Court has original jurisdiction pursuant to the 28 U.S.C. § 1331 and the CAN-SPAM Act. Complaint ¶ 1.

As stated in the Complaint, Imarketing maintains its offices in Delray Beach, Palm Beach County, Florida. Complaint ¶ 2. Plaintiff asserts that: "Defendants have purposely availed themselves of the privileges of conducting activities in the forum, the emails are the subject of the action, and exercise of jurisdiction is reasonable since Defendants should have known they would be subject the jurisdiction and laws of the forum when commercial email accounts at a Northern California Internet Access Provider." Complaint ¶ 6. Plaintiff's assertion of personal jurisdiction is based only on Plaintiff's assumptions that Imarketing caused the harm alleged. Further, as discussed more fully in its Motion, no violation of the CAN-SPAM Act actually occurred based on the exhibits attached to the Complaint and Plaintiff's own allegations. Therefore, the Complaint must be dismissed for this Court's lack of personal jurisdiction over Imarketing.

---

[1] The instant action is one of several filed by Plaintiff in this Court over the past six (6) months alleging violations of the CAN-SPAM Act against various unrelated companies.

Additionally, in its Opposition Response, Plaintiff erroneously asserts that Imarketing waived its argument as to lack of personal jurisdiction by arguing that Plaintiff has failed to plead its Complaint with the requisite particularity. Opposition Response at 5.[2] Plaintiff does not and cannot provide any legal support for this assertion. Imarketing raised lack of jurisdiction in its initial responsive pleading, then raised the other deficiencies in the Complaint and requested a transfer of venue to be considered in the alternative. Therefore, Imarketing has not waived its argument as to lack of personal jurisdiction.

Plaintiff alleges this Court has specific jurisdiction over Defendants because Defendants purportedly knowingly sent multiple commercial email messages to accounts at a Northern District of California Internet Access Provider. In its unverified Opposition Response, but not the Complaint, Plaintiff states that ASIS was "required to use it email services to process the emails, its spam filtering service to filter the emails, its network connections to receive he emails, and its agent's efforts in investigating the emails." Opposition Response at 6. However, at this time, it is unclear who sent the emails and Plaintiff has failed to even a single complete email address to allow Defendant the requisite notice to investigate Plaintiff's claims.

In support of its Motion, Imarketing attached the Affidavit of Robert Clouse, the CEO for Imarketing ("Clouse's Affidavit"); wherein, it states that Imarketing is not doing business in California, has no employees or customers in California, does not advertise in California, owns no property in California, does not have an address or phone listing in California, and is not sending emails to anyone in California. Clouse's Affidavit further attests that Imarketing has established and implemented, with due care, reasonable practices and procedures to effectively prevent violations of the CAN-SPAM Act. Any violation of the CAN-SPAM Act alleged in the Complaint, even if proven to be by Imarketing, occurred despite commercially reasonable efforts to maintain compliance with such practices and procedures. Moreover, as discussed herein and more full in its Motion, Plaintiff cannot overcome the

---

[2] For this Court's convenience, the Opposition Response's page numbers are those generated during efiling appearing at the top of each page and not those on appearing in the foot of Plaintiff's Opposition Response.

1  evidence offered in the exhibits attached to the Complaint, which show the sender complied with
2  the CAN-SPAM Act.

3  To rebut Imarketing's Motion and the Clouse Affidavit, Plaintiff attaches the
4  three paragraph Declaration of Joel Householter with attached emails purportedly sent to
5  customers of IAP Foogy.net ("Householter's Declaration").  However, Mr. Householter has
6  nothing to do with the instant action based on the allegations of the Complaint; Mr. Householter
7  is not a party to this action and Plaintiff does not state that Mr. Householter or IAP Foogy.net has
8  any affiliation to the Plaintiff.  Apparently, Mr. Householter's only connection to the instant
9  action is that he is one of Plaintiff's counsel other clients. Opposition Response at 5.  This is not
10 enough to establish specific jurisdiction.

11 More importantly, the emails addresses contained in the attachments to
12 Householter's Declaration have been redacted as well.  This is significant because it does not
13 allow Imarketing to properly research whether emails were sent to this address and, if emails
14 were sent to that address, whether the email was sent as the result of an opt-in by the email
15 address owner or other affirmative action taken by the email address owner.  Interestingly, in its
16 discussion of the emails sent to Mr. Householter's IAP Foogy.net, Plaintiff points to the opt-out
17 provision in the email to identify Imarketing as the source of the email, which establishes the
18 sender's compliance with the CAN-SPAM Act.

19 Plaintiff states that "other forums have held that sending emails into a forum
20 constitute the minimal contacts required for specific personal jurisdiction."  The cases cited by
21 Plaintiff can all be distinguished from the following cases as follows: Aiken v. Communications
22 Workers of America, 496 F.Supp.2d 653, 659 (E.D. Va. 2007) (In this case, tort claims were also
23 alleged in addition to the CAN-SPAM Act violations, Virginia's long arm statute was found to
24 authorize personal jurisdiction since the allegedly tortious email messages were sent to Virginia
25 computers over Virginia servers); Verizon Online Services, Inc., 203 F.Supp.2d 601, 611-620
26 (E.D. Va. 2002) (The Court determined that the Amended Complaint adequately alleged a
27 tortious injury occurring in Virginia enough to tort prong of Virgina long-arm statute); and
28 Internet Doorway, Inc. v. Parks, 138 F.Supp.2d 773, 779-780 (S.D. Miss. 2001) (Internet service

Defendant's Reply to Plaintiff's Response in Opposition to Motion to Dismiss Complaint - 4

provider brought tort suit against non-resident sender of e-mail, which advertised pornographic web site and had been made to appear as if it had been sent from one of provider's accounts, the court held that the alleged transmission satisfied "tort" prong of Mississippi long-arm statute). In a case not cited by Plaintiff, <u>Phillips v. Worldwide Internet Solutions</u>, 2006 WL 1709189 (slip copy) (N.D. Cal. 2006), in which the plaintiff was represented by Plaintiff's counsel in the instant action, this Court considered similar issues as to whether personal jurisdiction was appropriate; therein, this Court found that the plaintiff did not establish either general or specific jurisdiction over the defendant.

Plaintiff has submitted an unverified Complaint, unverified Opposition Response, and Householter's Declaration. However, these documents do not support Plaintiff's claim that Imarketing is engaged in business in California or has minimal contacts sufficient for this Court to exercise specific jurisdiction. Furthermore, Plaintiff has not alleged and cannot show that Imarketing has caused an injury to Plaintiff. Thus, Plaintiff has failed to make a prima facie showing that Imarketing has sufficient minimum contacts with California to warrant the exercise of personal jurisdiction over Defendants in California.

**B.    <u>The Northern District of California Is Not the Proper Venue for This Action.</u>**

In the Complaint, Plaintiff asserts: "Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) and is founded on the fact that a substantial part of the unlawful action occurred in this judicial district." Complaint ¶ 7. Then, in its Opposition Response, Plaintiff further states that Imarketing "misrepresents that language of 28 U.S.C. 1391(b) and current case law." Opposition Response at 5. However, in its Motion, Imarkerting provides the exact language from 28 U.S.C. 1391(b), which provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Motion at 4 (*quoting* 28 U.S.C. 1391(b)).

As stated in its Motion, Imarketing resides in Delray Beach, Palm Beach County, Florida, which is in the Southern District of Florida.  Plaintiff does not allege any events that occurred in Northern District of California except that "emails were to email accounts at a Northern California Internet Access Provider."  Complaint ¶ 6.  In its Opposition Response, Plaintiff states: "The 9th Circuit has held that the locus of an injury in a tort claim is substantial factor in determination of venue." Opposition Response at 11 (*citing* Myers, 238 F.3d at 1072). Plaintiff seems to ignore that this is not a tort claim but an action for violation of the CAN-SPAM Act.  Nevertheless, Plaintiff does not allege any injuries in the Complaint.  In fact, the alleged "spam" emails did not cause any harm or injury in the Northern District California, as they were, by Plaintiff's own admission, sent to unassigned or inactive email accounts owned by Plaintiff.   Complaint ¶ 14.

After the issue of improper venue and jurisdiction was raised by Plaintiff, Plaintiff still failed to provide the actual email addresses to which the alleged spam was sent.  As stated in the Motion, litigating the instant action in the Northern District of California will be costly for Imarketing, which has its principal place of business in the Southern District of Florida. Imarketing attached to its Motion Clouse's Affidavit attesting to the foregoing and that the evidence and witnesses for Imarketing are all in Southern District of Florida.  In its Opposition Response, Plaintiff makes similar statements to support keeping the case in this Court; however, these arguments are not in set forth in an affidavit or any verified form.

28 U.S.C. § 1404, provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Thus, 28 U.S.C. § 1404 authorizes a district court to transfer any civil action to any other district or division where the action might have been brought, for the convenience of the parties and witnesses, if the transferee court is one in which proper venue can be laid, where the case might have been brought originally, and one which will have jurisdiction of the subject matter and over the parties.  Based on the above stated criteria, the facts of the instant case stated herein and Imarketing's CEO Robert Clouse's Affidavit, this action could

1  have been brought and should have been brought in the Southern District of Florida. For the
2  reasons asserted herein, if this case is not dismissed, the equities and general interests of justice
3  favor transferring this case to the Southern District of Florida.

**C.**     **Plaintiff's CAN-SPAM Act Claim Is Not Pleaded With the Requisite Particularity.**

As argued in the Motion, a complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where there is either a "lack of cognizable legal theory" or the absence of sufficient facts to support a cognizable legal theory. Balestreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Although this Court must take all material allegations in a complaint as true and construe them in the light most favorable to the Plaintiff, this Court is not required to accept legal conclusions cast in the form or factual allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). In the Complaint, Plaintiff simply alleges that the emails sent by Defendants were "accompanied by header information that was materially false or materially misleading." Complaint ¶ 19. Plaintiff's Complaint is not pleaded with the requisite particularity for averments of fraud, including why the header was misleading. Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985).

In its Opposition Response, Plaintiff argues that it "has provided sufficient details to meet the heightened pleading standard on FRCP Rule 9(b)." Opposition Response at 15. In the instant action, Plaintiff's claim is based primarily on violations of 15 U.S.C. § 7704(a)(1). Plaintiff alleges that: "all of the relevant electronic mails sent by the Defendants on May 10, 2007, through September 4, 2007, contained or were accompanied by header information that was materially false or materially misleading." Complaint ¶ 19. Plaintiff collectively charges the Defendants with the responsibility of sending these allegedly false emails, which runs afoul

of Rule 9(b). <u>ASIS Internet Services v. Optin Global, Inc.</u>, 2006 WL 1820902 * 4 (N.D. Cal. June 30, 2006) (Not Reported in F.Supp.2d). Moreover, as will be discussed further below, the exhibits attached to the Complaint contradict Plaintiff's averment that the emails were misleading.

Plaintiff further alleges the Defendants discovered the emails by "directory harvest or other illegal means" in violation of 15 U.S.C. § 7704(b)(1) and (2). Complaint ¶ 15. But in the Complaint, Plaintiff redacts the email addresses to which the alleged "spam" from Defendants was sent. Therefore, Defendants are without notice as to which email address or addresses the emails were actually sent. Furthermore, Plaintiff has not alleged the elements required under 15 U.S.C. § 7704(b)(1) and (2), and does not plead anything to support its claim that the emails were generated in a manner that violates the Act.

Moreover, Plaintiffs allegations are contradicted by Clouse's Affidavit, which states "Imarketing has established and implemented, with due care, reasonable practices and procedures to effectively prevent violations of the CAN-SPAM Act. Any violation of the CAN-SPAM Act alleged in the Complaint, even if proven to be by Imarketing, occurred despite commercially reasonable efforts to maintain compliance with such practices and procedures." Imarketing's practices and procedures to effectively prevent violations of the CAN-SPAM Act include not using directory harvest or other illegal means to generate email addresses. Plaintiff has offered no facts or evidence to contradict Clouse's Affidavit.

### D. **Plaintiff Fails to State a Claim for Which Relief May Be Granted.**

The CAN-SPAM Act makes it "unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message ... that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1). The Act also prohibits a person from initiating the transmission of commercial email messages if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject of the message. 15 U.S.C. § 7704(a)(2). "Header information" means the

"source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 15 U.S.C. § 7702(8). As stated above and in the Motion, Plaintiff does not allege with the requite particularity how either the "subject headings of the message" or the "headers" are materially false or misleading in the Complaint.

In its Opposition Response, Plaintiff argues that the email headers are materially false or misleading. Plaintiff asserts that in Imarketing's Motion, Imarketing discussed the subject headings more specifically than the "headers," which are the subject of Plaintiff's 15 U.S.C. § 7704(a)(1) claim. However, this does not change Imarketing's arguments as to Plaintiff's failure to plead with particularity or failure to plead a claim for which relief may be granted. In fact, it is because of this lack of particularity and the fear of what Imarketing might plead if granted leave to amend its Complaint, Imarketing's counsel expanded the scope beyond just the headers. More importantly, the basic analysis for failure to comply with CAN-SPAM Act is the same for both subject lines and headers.

For example, in <u>Omega World Travel, Inc. v. Mummagraphics, Inc.</u>, 469 F.3d 348 (4th Cir. 2006), the Fourth Circuit held that inaccuracies in e-mail headers, which referred to a sender's non-functional e-mail address and an Internet domain not linked to sender, did not make the headers materially false or materially misleading and, therefore, did not violate the CAN-SPAM Act. The Fourth Circuit found that the sender complied with the CAN-SPAM Act where the e-mails contained a link on which the recipient could click in order to be removed from future mailings, contained a separate link to sender's website, prominently displayed a toll-free number to call, and listed a Florida mailing address and local phone number for the sender. <u>Id.</u> at 354-355 (*citing* 15 U.S.C.A. § 7704(a)(1)). Likewise, as stated in the Motion, the emails attached to the Complaint are in compliance with the CAN-SPAM Act by virtue of one or all of the following elements being present:

a.   a clear and conspicuous identification that the email is an advertisement or solicitation;

b.   an opt-out mechanism allowing the recipient not to receive any further unsolicited emails from sender;

c.   a working return email address or automated means allowing the recipient to opt-out of receiving such emails;

d.   a valid physical address of the sender; and

e.   recipient provided affirmative consent to receive such messages.

Imarketing has established and implemented, with due care, reasonable practices and procedures to effectively prevent violations of the CAN-SPAM Act; any violation thereof, even if proven to be by Imarketing, occurred despite commercially reasonable efforts to maintain compliance with such practices and procedures. Rule 10(c) of the Federal Ruled of Civil Procedure expressly provides that a written instrument that is an exhibit to a pleading becomes a part of the pleading for all purposes.  By attaching an exhibit, the pleader often may foreclose recovery on a theory of relief that he claims is available to him, since the document itself may reveal the existence of an insurmountable defense.  Here, as discussed more fully in the Motion, Plaintiff cannot overcome the evidence offered in the exhibits attached to the Complaint, which show the sender complied with the CAN-SPAM Act.

In the Complaint, Plaintiff conflates using a domain registrar proxy service Domains by Proxy with fraudulent activity.  However, using a domain registrar proxy service is legal and an increasingly common business practice utilized by large, small, private, and public corporations and businesses.  Plaintiff states that it "has demonstrated that acquiring a domain name from a privacy service requires a representation that the domain name will not be used to send SPAM...since using the domain name to send SPAM violates the registration agreement, the domain names was acquired by false representation." Opposition Response at 14.  However, Plaintiff has not attached an actual registration agreement between Imarketing and a domain name registrar, or produced anything showing that a domain name was obtained by means of false or fraudulent pretenses or representations in violation of such an agreement.

Nevertheless, the Domains by Proxy website provides that: "We do not allow our customers to send mass unsolicited e-mails, or 'spam.' To report spam abuse to us, fill out the

following form and click 'Submit Complaint.' We will review the information in a timely manner and act accordingly."[3] If Plaintiff believes that the email sender engaged in such activity, and if the Plaintiff was actually a victim or being damaged by the alleged "spam," then why did the Plaintiff not report such activity to Domains by Proxy?

As argued in the Motion, when granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, unless an amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir 1990). In determining whether an amendment would be futile, this Court must examine whether Plaintiff could cure the defects in the Complaint without contradicting any of the allegations of the original Complaint. <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Imarketing again asserts that allowing Plaintiff to amend the Complaint would be futile.

WHEREFORE, for the above-stated reasons, Defendant Imarketing Consultants, Inc., respectfully requests this Court dismiss the Complaint without leave to amend or, in the alternative, transfer the case to the Southern District of Florida.

Dated: February 8, 2007

/s/ Arthur W. Fleishman
Arthur W. Fleishman, Esquire
CA Bar No.: 222886
McClosky, D'Anna & Dieterle, LLP
2300 Glades Road, Suite 400 East
Boca Raton, FL 33431
(561) 368-9200 (telephone)
(561) 395-7050 (facsimile)
Attorneys for Defendants,
IMARKETING CONSULTANTS, INC.

---

[3] Quoted from http://domainsbyproxy.com/LegalAgreement.aspx?prog_id=/, which was visited on February 7, 2008.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 7, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorize to receive electronically Notices of Electronic Filing.

/s/ Arthur W. Fleishman
Arthur W. Fleishman, Esquire
California Bar No. 222886

## SERVICE LIST

ASIS INTERNET SERVICES, a California Corporation, vs. IMARKETING CONSULTANTS, INC., dba ULTRA-MX.COM, also dba SPEED NETWORK, also dba SPEED-MX.com, and DOES ONE through FIFTY, inclusive.
Case No.: C 07-05357 CW
United States District Court, Northern District of California

**Counsel for Plaintiff:**

Jason K. Singleton, Esquire
lawgroup@sbcglobal.net
Richard E. Grabowski, Esquire
rgrabowski@pacbell.net
Singleton Law Group
611 "L" Street, Suite A
Eureka, CA 95501
Telephone: (707) 441 – 1177
Facsimile: (707) 441 – 1533
*Served by CM/ECF*