United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ASIS INTERNET SERVICES,

Plaintiff,

v.

IMARKETING CONSULTANTS, INC., dba ULTRA-MX.COM, also dba SPEED NETWORK, also dba SPEED-MX.COM, and DOES ONE through FIFTY, Inclusive,

Defendants.

/

No. C 07-05357 CW

ORDER DENYING MOTION TO TRANSFER, GRANTING IN PART MOTION TO DISMISS AND SETTING CASE MANAGEMENT CONFERENCE

INTRODUCTION

Defendant Imarketing Consultants, Inc. moves pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) to dismiss Plaintiff Asis Internet Services' complaint, for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, Imarketing moves, pursuant to 28 U.S.C. § 1404, to transfer venue to the Southern District of Florida.

These matters have been submitted on the papers. Having considered all of the papers filed by the parties, the Court denies the motions to dismiss for lack of personal jurisdiction and to transfer venue, grants in part the motion to dismiss for failure to

state a claim, and grants Asis leave to file an amended complaint.

BACKGROUND

The facts below are taken from Asis's complaint. The Court may also consider declarations in ruling on a motion to dismiss for lack of personal jurisdiction, see Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1289 (9th Cir. 1977), and does so as noted below.

Asis is a California corporation and an internet service provider (ISP). Imarketing is a Florida corporation with its principal place of business in Palm Beach County, Florida. Complaint at ¶ 3. Imarketing's services have always been performed in Palm Beach County, Florida. Clouse Affidavit at ¶ 8. Imarketing does not have any employees or customers in California. Id. at 7. Imarketing does not advertise, own property, or have an address or phone listing in California. Id.

Imarketing directed, controlled and participated in "spamming," causing more than 1,000 deceptive and unsolicited commercial electronic messages to be sent to Asis's computer server between May 10, 2007 and September 4, 2007. The header information for those emails was falsified, misrepresented or forged. Asis believes that Imarketing used illegal means to address these emails to Asis's computer.

Asis alleges claims under the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), 15 U.S.C. § 7701 et seq., which restricts the transmission of unsolicited commercial email. Specifically, Asis alleges violations of 15 U.S.C. § 7704(a)(1) which prohibits the transmission of fraudulent header information, 15 U.S.C.

United States District Court
For the Northern District of California

§ 7704(b)(1) which prohibits address harvesting and dictionary attacks, and 15 U.S.C. § 7704(b)(2) which prohibits automated creation of multiple electronic mail accounts. Asis attaches the following documents to its complaint: (1) samples of the subject emails, which list the sender as "ultra-mx.com" and a postal opt-out address as 1300 NW 17th Ave., Suite 218, Delray Beach, Florida 33445; (2) a record from WHOIS, a database that provides owner information for domain names, which shows that Ultra-mx is registered by "Domains by Proxy," a service that protects the identity of its registrants; (3) a service description for "Domains by Proxy," including its subpoena policy for identifying registrants; (4) Imarketing's 2007 Annual Report, listing its CEO as Robert Clouse and its address as 1200 NW 17th Ave., Suite 1, Delray, FL, 33445; (5) printouts from Imarketing's website, describing its services, and listing its contact address as 1300 NW 17th Ave., Suite 218, Delray Beach, FL 33445; (6) the source of the IP address listed on the subject emails as an MCI source server used by MCI customer Imarketing.

DISCUSSION

Imarketing first argues that it is not the correct entity to be sued in that Asis alleges that it "cannot identify the sender of the emails with absolute certainty because the emails were sent with the domain name 'ultra-mx.com.'" Comp. at ¶ 3. Imarketing also cites the declaration of its CEO, Robert Clouse, who, as noted above, states that Imarketing does not do business in California, does not advertise in California and is not sending emails to anyone in California. However, Asis submits evidence that the address listed on the subject emails is Imarketing's address, and

United States District Court
For the Northern District of California

Imarketing does not dispute this. Furthermore, Mr. Clouse merely states that Imarketing is not sending emails to California; he fails to dispute Asis's allegation that Imarketing sent the subject emails during the months of May through September, 2007. Therefore, the allegations and evidence are sufficient to claim that Imarketing is the entity that sent the subject emails.

I. Personal Jurisdiction

Imarketing argues the complaint must be dismissed due to a lack of personal jurisdiction. Asis responds that the Court may exercise specific jurisdiction over Imarketing.

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986). Uncontroverted allegations in the complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor. AT&T, 94 F.3d at 588.

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the

applicable state personal jurisdiction rule and constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disc, Inc., 557 F.2d at 1286. California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum State so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either general or specific. Because Asis only claims specific jurisdiction, the Court does not address general jurisdiction.

Specific jurisdiction exists where the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286. Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction. Insurance Co.

of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

A. Purposeful Direction and Availment

A showing that a defendant "purposefully directed" its conduct toward a forum State "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Schwarzenegger, 374 F.3d at 803. For intentional tort cases, purposeful direction is analyzed under the "effects" test derived from Calder v. Jones, 465 U.S. 783, 788-89 (1984). Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). The "effects test" requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum State, (3) causing harm that the defendant knows is likely to be suffered in the forum State. Id.

A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum State typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. Schwarzenegger, 374 F.3d at 802. The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into the forum State court based on its contacts. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The purposeful availment test is met where "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard, 65 F.3d at 1498.

In Dole Foods, the court found that where the foreign defendants communicated directly and substantially with the

plaintiffs with the purpose of causing the plaintiffs' harm, the defendants had expressly aimed their acts at the forum State. Dole Foods, 303 F.3d at 1112-14. Similarly, Asis alleges that Imarketing purposefully sent mass commercial emails to Asis for its own commercial gain. The harm to Asis was felt in Northern California, where Asis is located. Imarketing knew that Asis would likely suffer harm there because Asis's server is registered as being located in Northern California. See also Panavision, 141 F.3d at 1321. The Court finds that Imarketing directed its conduct toward California and purposefully availed itself of the privilege of doing business here.

B. Arising Out of Forum-Related Activities

The second factor requires that the claim arise out of or result from the defendant's forum-related activities. A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. Panavision Int'l v. L.P.v. Toeppa, 141 F.3d 1316, 1322 (9th Cir. 1998).

This test is satisfied because, but for Imarketing's allegedly sending mass commercial emails to Asis's server, Asis would not have been harmed. Thus, Asis's claims arise directly out of Imarketing's alleged activities.

C. Reasonableness

Once the plaintiff has satisfied the first two factors, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985); Haisten v. Grass Valley

Medical Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum State's affairs, (2) the burden on the defendant of defending in the forum, (3) conflicts of law between the forum State and the defendant's home jurisdiction, (4) the forum State's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995); Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

a. Purposeful Interjection

"Even if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." Core-Vent, 11 F.3d at 1488 (internal quotations and citations omitted). In Panavision, the Ninth Circuit found that the purposeful interjection factor weighed strongly in the plaintiff's favor based on the fact that the defendant acted "knowing that" its registration of the plaintiff's domain name "would likely injure" plaintiff who was located in California. Panavision, 141 F.3d at 1323. Asis alleges that Imarketing "should have known that they would be subject to the jurisdiction and laws of the forum when commercial emails were sent to email accounts at a Northern California Internet Access Provider. Complaint at ¶ 6. Thus, Asis

United States District Court
For the Northern District of California

satisfies the purposeful interjection prong, which weighs in favor of the Court's personal jurisdiction.

b. Defendant's Burden in Litigating

A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995) (citing Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991)).

The burden on Imarketing, a Florida business with no other connections to California, is significant, but the inconvenience is not so great as to deprive Imarketing of due process. See Panavision, 141 F.3d at 1323 (finding an Illinois defendant's burden in litigating in California significant, but not unreasonable). Because of modern technology such as fax machines, requiring Imarketing to litigate in California is not constitutionally unreasonable. See Dole Foods, 303 F.3d at 1115 (stating, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country"); Panavision, 141 F.3d at 1323 (same).

c. Sovereignty

This factor concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of Florida, Imarketing's domicile. Core-Vent, 11 F.3d at 1489. Such a conflict is not a concern in this case. The allegations in support of Asis's claims under the CAN-SPAM Act, a federal law, require the same analysis in either Florida or

**United States District Court**
For the Northern District of California

California. In this circumstance, the exercise of jurisdiction by a federal court in California does not implicate sovereignty concerns of Florida.

d. Forum State's Interest

"California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." Gordy v. Daily News, L.P., 95 F.3d 829, 836 (9th Cir. 1996) (citing Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988)). Asis's server and its principal place of business is in California. This factor weighs in Asis's favor.

e. Efficient Resolution

This factor focuses on the location of the evidence and witnesses. Caruth, 59 F.3d at 129. It is no longer weighed heavily given the modern advances in communication and transportation. Id.; Panavision, 141 F.3d at 1323. Both Asis and Imarketing indicate they have witnesses and evidence in their respective forums. Because neither party presents a stronger case, this factor is neutral.

f. Convenience to Asis

"In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1324; Ziegler, 64 F.3d at 476. It may be somewhat more costly and inconvenient for Asis to litigate in another forum, but the burden on Asis is relatively slight. This factor is essentially neutral, weighing only slightly in Asis's favor.

g. Alternative Forum

Asis has not demonstrated the unavailability of an alternative forum. In this case, Florida is an alternative forum. As stated above, it may be more costly and inconvenient for Asis to litigate in Florida, but this is not an unreasonable burden. This factor weighs in Imarketing's favor.

h. Balancing the Reasonableness Factors

In balancing these factors, some factors weigh in Imarketing's favor, but it fails to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable. Therefore, all of the requirements for the exercise of specific jurisdiction are satisfied. The Court has personal jurisdiction over Imarketing.

II. Motion to Transfer

Title 28 U.S.C. § 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute identifies three basic factors for district courts to consider in determining whether a case should be transferred: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. The Ninth Circuit has articulated other considerations that are subsumed in these basic factors, including: the plaintiff's choice of forum; ease of access to the evidence; the familiarity of each forum with the applicable law; the nexus between the forum and the causes of action; the parties' contacts with the forums; and any difference in the costs of litigation between the two forums. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Jones v. GNC Franchising,

Inc., 211 F. 3d 495, 498-99 (9th Cir. 2000). No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis. Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., Inc., 964 F.2d 635, 639 (9th Cir. 1988).

A. Plaintiff’s Choice of Forum

Ordinarily, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. Decker, 805 F.2d at 843. This is especially true when the forum chosen by a plaintiff is its domicile and its cause of action has a significant connection with the forum. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (citing Pac. Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968 )). However, "if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Ctr. for Biological Diversity and Pac. Env't v. Kempthorne, 2007 WL 2023515, at *3 (N.D. Cal.) (quoting Pac. Car and Foundry, 403 F.2d at 954)); see also Lou v. Blezberg, 834 F.2d 730, 739 (9th Cir. 1987).

Asis's choice of forum is entitled to considerable deference, and should not easily be overturned. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

B. Interest in Litigation

Florida has an interest in regulating the conduct of corporations organized under its laws. Edgar v. MITE Corp., 457 U.S. 624, 645 (1982); Decker, 805 F.2d at 843. However, this case

is not a complex matter involving the intricacies of Imarketing's corporate governance. Imarketing has not suggested that a resolution of this case will turn on the nuances of Florida law. Accordingly, Florida's interest in the matter is attenuated and does not provide sufficient reason to depart from Asis's choice of forum.

C. Convenience for the Parties and Witnesses

This Court is a more convenient forum for Asis because Asis is located in Northern California. On the other hand, CAN-SPAM litigation in California would be inconvenient and expensive for Imarketing.

A transfer to Florida would simply shift the burden of inconvenience from Imarketing to Asis. Because transfer of venue should not be used to shift the burden of inconvenience from one party to another, the convenience of the parties does not provide basis for transferring this case to the Southern District of Florida.

Imarketing submits the Clouse declaration in which Mr. Clouse states that Imarketing's witnesses in this case are located in Florida and that Florida would be a more convenient forum for them than California. The principle that transfer may not be used to shift an inconvenience from one party to another operates with respect to witnesses as well as to parties. Decker, 805 F.2d at 843. Imarketing's witnesses in this case are all individuals associated with Imarketing, and there is no indication that they would not appear to testify if the case remained in the Northern District of California. Therefore, the convenience of witnesses does not provide grounds for transfer.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

D. Access to the Evidence

Mr. Clouse declares that Imarketing's evidence is located in Florida. Presumably, Asis's evidence is in California. Thus, this factor is neutral.

E. Location of Events Giving Rise to the Causes of Action

The emails were allegedly sent by Imarketing in Florida. Asis alleges it was harmed by receiving the emails on its server which is located in California. Accordingly, this factor is neutral.

F. Difference in Costs of Litigation

Imarketing argues that litigation in this district would be more costly for it than litigation in the Southern District of Florida because there are more witnesses and evidence in Florida. As stated above, Imarketing has not shown that its litigation in California would be more costly than Asis's having to litigate in Florida. There is no indication that litigation expenses in general are less in Florida. Therefore, this factor is neutral.

G. Summary of Factors

After considering the convenience and fairness to the parties and the interests of justice, the Court concludes that the factors tip in favor of litigating this action in California. Therefore, Imarketing’s motion to transfer venue is DENIED.

III. Dismissal for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See

Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

The CAN-SPAM Act makes it "unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially

misleading." 15 U.S.C. § 7704(a)(1).

The Act defines "materially false or misleading" as:

> header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations . . .

15 U.S.C. § 7704(a)(1)(A). The Act defines "materially" to "include the alteration or concealment of header information" in a manner that would impair the ability of an ISP to locate, identify or respond to a person who initiated the message. 15 U.S.C. § 7704(a)(6).

Header information is defined as:

> the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating a message.

15 U.S.C. § 7702(8).

Where there are allegations that the contents of the emails, including the header information, are fraudulent, Federal Rule of Civil Procedure 9(b) applies to those particular averments of fraud. Asis Internet Services v. Optin Global, Inc., 2006 WL 1820902, *4 (N.D. Cal.). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, Rule 9(b)'s specificity requirement does not apply to allegations regarding the origination of the addresses to which the emails were sent, only to the emails' content. Id.

United States District Court
For the Northern District of California

A. Header information

Imarketing first argues that Asis failed to plead with the requisite particularity that the header information is materially false or misleading.

In its complaint, Asis alleges that the headers Imarketing used violated § 7704(a)(1) because they showed a domain name which is registered to Domains by Proxy, a protection service that keeps the identity of its registrants confidential; a subpoena is necessary in order to obtain information from Domains By Proxy. This impairs the ability of an ISP to locate, identify or respond to the person who initiated the message. Assuming without deciding that such a claim must be plead with particularity, it is sufficiently alleged. Imarketing provides no argument or authority to dispute Asis's claim that such conduct violates the act.

In its opposition, Asis argues an additional theory for violation of this section. It points out that Exhibit C attached to the complaint, which is a copy of the website of Domains By Proxy, indicates that Domains By Proxy requires its customers to represent that the domain name it provides to them will not be used to transmit spam. Asis argues that, because Imarketing transmitted spam, it acquired its domain name by a false representation in violation of 15 U.S.C. § 7704(a)(1)(A). This theory, however, is not alleged in the complaint. If Asis wishes to pursue it, Asis must allege it in its amended complaint.[1]

[1]Asis does not allege a claim under 15 U.S.C. § 7704(a)(2) which would require it to allege that Imarketing had actual knowledge or knowledge fairly implied on the basis of objective circumstances that a subject heading would be likely to mislead a recipient about a material fact regarding the content or subject matter of the message.

B. Directory Harvest and Automated Creation of Email Accounts

Imarketing argues that Asis's allegations that Imarketing used a "directory harvest or other illegal means" to procure email addresses are not sufficient because Asis redacts the email addresses to which the emails were sent, and therefore Imarketing is without notice as to Asis's claims pursuant to § 7704(b)(1) (prohibiting address harvesting) and § 7704(b)(2)(2) (prohibiting automated created of multiple electronic email accounts).

Asis responds that recipient information is its protected corporate information and to release the addresses would expose it to potential attacks by unscrupulous persons. In its opposition, Asis indicates that it will provide the entire set of emails without redaction when a protective order is in place restricting its corporate information to attorneys only.

As indicated above, Rule 9(b)'s heightened pleading standard does not apply to the initiation of the emails; therefore, Rule 8's notice pleading standard applies here. Asis alleges that none of the email accounts receiving emails were active and could have only been discovered by directory harvest or other illegal means in violation of § 7704(b)(1) and (2). Complaint at ¶ 15. Additionally, Asis alleges that Imarketing "used an automated creation of multiple email accounts." Asis explains that the emails were sent from an account using the advertiser's name as the first portion of the email account name, followed by various sub-domain names and the primary domain name, which "indicates the email accounts were generated programmatically using a database of information containing the advertisers [sic] identities." Complaint at ¶ 16. These claims are sufficiently stated to satisfy Rule 8's notice

United States District Court
For the Northern District of California

pleading standard.

Imarketing also complains that Asis makes its allegations against Defendants collectively. However, Asis has named only one Defendant.

Imarketing argues that Asis fails to state a claim under the CAN-SPAM Act because the sample emails attached as exhibits to the complaint do not violate all of the elements of the CAN-SPAM Act. Section 7706(g)(1) of the CAN-SPAM Act provides that "a provider of Internet access service adversely affected by a violation of section 7704(a)(1) of this title, 7704(b) of this title, or 7704(d) of this title . . . may bring a civil action . . ." Therefore, any one of these is actionable. Furthermore, the declaration of Robert Clouse referred to by Imarketing is inadmissible on a motion to dismiss for failure to state a claim. Imarketing's motion to dismiss on this ground is denied.

Imarketing also argues that the subject lines of the emails attached as exhibits indicate that they are not false. However, as Asis points out, it does not allege a claim under § 7704(a)(2) which addresses deceptive subject lines. Therefore, Imarketing's motion to dismiss on this ground is denied.

Finally, Imarketing argues that Asis has failed to allege that it has been injured by receiving the subject emails. In its opposition, Asis indicates that it has been adversely affected because it must process the emails on its server and have its agents investigate the emails. However, Asis does not allege this adverse effect in its complaint. Therefore, Imarketing's motion is granted on this ground; Asis is granted leave to amend to allege how it was adversely affected.

V. CONCLUSION

For the foregoing reasons, the Court DENIES Imarketing's motion to dismiss for lack of personal jurisdiction, DENIES Imarketing's motion to transfer venue, GRANTS in part Imarketing's motion to dismiss and GRANTS Asis leave to amend. The amended complaint shall be filed with two weeks from the date of this order. A case management conference shall be held on August 7, 2008 at 2:00 pm. If Imarketing wishes to file a motion to dismiss the amended complaint, it shall notice such motion for hearing on the same date as the case management conference.

IT IS SO ORDERED.

Dated: 5/16/08

Claudia Wilken
UNITED STATES DISTRICT JUDGE